Filed 8/16/16  In re R.D. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re R.D., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY DEPARTMENT OF HEALTH AND SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LISA H.,<br><br>        Defendant and Appellant. | A146846<br><br>(Solano County<br>Super. Ct. No. J43082) |

Lisa H. (Mother) appeals from the juvenile court's dispositional orders in this dependency case.  Her sole challenge on appeal is to the court's order regarding visitation.  We affirm.

BACKGROUND[1]

In July 2015, the Solano County Department of Health and Social Services (the Department) filed a Welfare and Institutions Code section 300[2] petition regarding eight-year-old R.D. (Minor).  The juvenile court subsequently sustained the following allegations, which Mother does not challenge on appeal: First, that "[Mother] has

[1] Background facts not relevant to this appeal are omitted.

[2] All undesignated section references are to the Welfare and Institutions Code.

1

suffered periodically from depression and has not consistently followed the medication recommendations of her treating doctor. Moreover, [Mother] has not successfully addressed her history of substance abuse, periodically self-medicating w/methamphetamine and alcohol, in spite of prior intervention by the Department of Social Services of San Mateo County under a Voluntary Maintenance Plan. As a result, the mother's ability to provide a safe and secure home for her daughter has been negatively impacted and [Minor] is at substantial risk of harm"; and second, that Mother and Joshua D. (Father), "have engaged in domestic violence, including physical and verbal incidents, in the presence of [Minor] with the most recent incident on July 23, 2015. [Minor] has exhibited symptoms of anxiety or emotional distress as a result of her exposure to ongoing domestic violence between the parents. Voluntary services provided by San Mateo County to the parents in 2008 and 2009 to address domestic violence have not been successful in ameliorating domestic violence between them, placing [M]inor at substantial risk of harm."[3]

The detention and jurisdiction/disposition reports included the following facts. Minor lived with Father at the home of Minor's paternal grandmother, Maria. Mother previously lived with them until Maria obtained a restraining order against Mother.[4] Mother was homeless and lived in motels or in her car. Two July 2015 incidents led to the petition. First, on July 3 at 2:30 a.m., police officers found Mother and Minor sleeping in Mother's car. Next to Minor's body was an open, partially full gasoline container, a pack of cigarettes, and a lunch box containing a white substance that tested presumptively positive for methamphetamine. One of the responding officers had prior contacts with the family, and reported Minor had previously told him "she was completely overwhelmed with her parents' situation, always sleeping in cars or hotel rooms when she wants to see her mom." In the second incident, on July 23 at 3:00 a.m., police responded after Mother and Father had a heated argument at a gas station. Minor,

_____

[3] The juvenile court sustained an additional allegation regarding Father.

[4] Maria stated Mother attacked her, but Mother claims Maria attacked her first.

who was present, told a social worker that she had been sleeping in Mother's car when she was awakened by Mother screaming at Father. Minor told Mother she wanted to go to Maria's house but Mother tried to put Minor back in Mother's car.

In addition to these incidents, the reports included statements from Father, Maria, and others that Mother and Father frequently engaged in arguments in Minor's presence. Father also reported that Mother said in Minor's presence that she wanted to kill herself. Mother and Father both admitted using methamphetamine. Between 2008 and 2010, the family engaged in two voluntary family maintenance cases in a different county. During these cases, Mother and Father were provided with domestic violence and substance abuse services, and Mother was also provided with mental health services.

Following the detention hearing, Minor was placed in foster care[5] and the court ordered one two-hour supervised visit per week for each parent. The jurisdiction/disposition report described the visitations. During the first visit, Minor told Mother and Father, "Even if you yell and I'm scared sometimes I still love you." At the end of the visit, Minor began to cry and Mother and Minor hugged. After a few minutes, Mother was reminded it was time to end the visit; Mother became angry and told Department staff she was not going to leave when Minor was crying. Minor became more upset and a security guard came to escort Mother and Father out of the room. Mother continued to yell at Department staff. After Mother and Father left, Minor cried, yelled, hit the wall, and said she wished she were dead. At the end of the next visit, Minor became upset and said, "This really makes me want to commit suicide." Mother and Father told Minor not to say things like that. After Mother left at the end of the next visit, Minor began screaming, hysterically crying, and threatening suicide.[6] Minor said her "whole family is going to commit suicide because she's not there to stop them," and "she's the only one that made them happy, they need her to be with them or bad things are going to happen, and she won't have a family anymore." In the

_____

[5] It appears Minor was subsequently placed with Maria.

[6] The report indicated Mother did not say anything to intentionally provoke the reaction.

3

jurisdiction/disposition report, the social worker expressed concerns that Minor "made several statements expressing desire for self-harm" and "has also expressed much anxiety about her parents' wellbeing." The Department recommended continuing the two-hour supervised visits once per week.

At the jurisdiction/disposition hearing, Mother's counsel stated she was "entering an objection and submitting the matter to the Court . . . ." Counsel later added she would like the opportunity to make comments "on some visitation and issues related to that." The juvenile court sustained the allegations, adjudged Minor a dependent of the court, and removed her from the physical custody of Mother and Father. The court then heard comments from Mother about visitation.

Mother's counsel raised two issues. First, she stated there had been problems "with a visitation schedule being changed at the last minute, resulting in my client arriving by taxi, for example, five minutes late and then not be able to have the visit with her daughter." Counsel continued, "I did have a conversation or conversations with County Counsel regarding my client's concerns about changes in visitation schedule and my client's transportation issues," and "we want to continue, basically, making sure that all matters related to visitation are transparent; that my client is informed in advance of when and where visitation will occur . . . ." To that end, counsel represented she will "continue to discuss visitation issues, if they arise, with county counsel. And we'll try to make sure that these issues are addressed outside of the courtroom so there will not be any missed visits or problems in the future." The second issue raised was about scheduled telephone calls, which Mother understood were to be on Tuesdays and Thursdays at 7:00 p.m. but which had not always occurred on that schedule. Counsel asked "that the department try to ensure that those telephone calls occur on a regular scheduled basis." The Department responded that it did not "necessarily agree[] with all of the representations that were made," but it "is absolutely committed to ensuring that [Mother] receives her visitation."

The trial court ordered one two-hour supervised visitation per week with each parent, with Department discretion to determine appropriate supervision, eliminate

4

supervision, expand visitation, and/or restrict visitation, but not to eliminate it. The court also ordered two fifteen-minute telephone contacts per week for Mother, to take place on Tuesdays and Thursdays at 7:00 p.m. This appeal followed.

DISCUSSION

Mother's sole challenge on appeal is that the minimum visitation schedule ordered by the juvenile court "is much too low considering the circumstances of this case" and "undermined the aim of reunification services."

As an initial matter, Mother has forfeited this challenge by failing to raise the objection below. "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted [failure to object below to juvenile court's visitation order forfeited challenge on appeal].) Mother's unspecified objection at the beginning of the jurisdiction/disposition hearing was insufficient to preserve the issue. "General objections are insufficient to preserve issues for review. [Citation.] The objection must state the ground or grounds upon which the objection is based." (*In re E.A.* (2012) 209 Cal.App.4th 787, 790.) The visitation issues raised by Mother's counsel were limited to informing the court there had been problems with last minute changes to visitation and the parties would be trying to avoid these in the future, and asking the court to ensure Mother received her two weekly telephone calls. Mother never argued in the juvenile court that the minimum number of visitations was insufficient, and she has therefore forfeited the issue.

Even if the challenge were not forfeited, we would reject it. When reunification services are ordered, "[v]isitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) "We review an order setting visitation terms for abuse of discretion." (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356; see also *In re C.C.* (2009) 172 Cal.App.4th 1481, 1491 ["The frequency of . . . visits . . . depends on a broader assessment by the court of the child's 'well-being.' "].)

5

The juvenile court's order provided Mother with one in-person visit and two telephone contacts per week. There was ample evidence that Minor became extremely upset at the end of visits with Mother, and that Minor felt responsible for and anxious about Mother's well-being. Moreover, the court gave the Department discretion to increase visits; if the Department determines that additional visits would be consistent with Minor's well-being, it may provide them. The juvenile court's visitation order was not an abuse of discretion. *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, relied on by Mother, is not to the contrary. (*Id.* at pp. 1426–1427 [agency unreasonably limited developmentally disabled parents' visits with one-year-old minor where parents were protective, appropriate, and loving during supervised visits and there was no evidence increased visitation would have been detrimental to the minor's well-being].)

## DISPOSITION

The order is affirmed.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.